**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TRUDY R. HILTON, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2744 |
| | § | |
| EXECUTIVE SELF STORAGE | § | |
| ASSOCIATES, INC., *et al.,* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This FLSA case was tried to a jury in October 2008.  The jury found a statutory violation that was wilful but awarded a fraction of the amount the plaintiffs claimed.  The defendants have moved for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure.  The plaintiffs have moved for an award for attorneys' fees.  Based on a careful review of the motions, responses, and replies; the parties' submissions; and the applicable law, this court denies the defendants' motion for judgment as a matter of law and grants the plaintiffs' motion for attorneys' fees in part.  The reasons for these rulings are set out in detail below.

**I.      Background**

The plaintiffs, Trudy R. Hilton and Daniel J. Krupp, worked as coresident managers of a self-storage facility in Houston, Texas between February 24, 2004 and March 1, 2006.  They sued their former employers, T. C. Jester & 18th Ltd. d/b/a Heights Self Storage ("T. C. Jester") and Executive Self Storage Associates, Inc. ("Executive").  T.C. Jester owned the storage facility at which Hilton and Krupp worked and contracted with Executive to manage the facility.  The plaintiffs alleged that the defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing

to pay overtime for hours worked in excess of forty hours in a work week. The plaintiffs alleged that this violation was willful. After discovery and summary judgment motions, the plaintiffs' remaining FLSA claims were tried to a jury on October 29–31, 2008. At trial, Hilton and Krupp each sought $27,037 in overtime pay, for a total of $54,074. The jury found a willful FLSA violation but awarded Hilton and Krupp only $250 each, for a total of $500. Because of the willfulness finding, the recovery was doubled to $500 for each plaintiff, for a total of $1,000.

The defendants have moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), arguing that the evidence at trial did not support a finding that Hilton and Krupp incurred any unpaid overtime or that the defendants acted willfully. (Docket Entry No. 97). The plaintiffs have responded, (Docket Entry No. 98), and the defendants have replied, (Docket Entry No. 99).

The plaintiffs have moved for an award of attorneys' fees in the amount of $67,859.50, based on 266.5 hours of work. (Docket Entry No. 89). The defendants have responded, (Docket Entry No. 90), and the plaintiffs have replied, (Docket Entry No. 95).

## II.    The Motion for Judgment as a Matter of Law

At the close of the evidence at trial, the defendants moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). This court denied the motion and submitted the case to the jury. The defendants renew the motion under Rule 50(b), contending that the plaintiffs failed to meet their burdens of showing the amount and extent of overtime work performed and of showing that the defendants were aware that such work was being performed. The defendants also contend that the evidence at trial was insufficient to establish willfulness. The plaintiffs respond that there was sufficient evidence before the jury to sustain the verdict.

A.      The Legal Standards

1.      Judgment as a Matter of Law

A motion for judgment as a matter of law is appropriate when, on reviewing the entire record, there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on an issue. *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003). In evaluating the record, the court must make all reasonable inferences for the nonmoving party. *Id.*; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *DP Solutions*, 353 F.3d at 427 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In considering a Rule 50 motion for judgment as a matter of law following a jury verdict, the court must be "especially deferential" to the jury's findings. *Brown v. Bryan County, OK*, 219 F.3d 450, 456 (5th Cir. 2000). The Fifth Circuit standard for reviewing a jury verdict is whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." *Am. Home Assur. Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004) (quoting *Liberty Mut. Ins. Co. v. Falgoust*, 386 F.2d 248, 253 (5th Cir. 1967)). A jury verdict must stand unless there is a lack of substantial evidence, viewed in the light most favorable to the successful party, to support the jury's factual findings, or the legal conclusions implied from the jury's verdict cannot, in law, be supported by those findings. *Id.*

2.      The FLSA

"The Fair Labor Standards Act mandates that 'no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half

times the regular rate at which he is employed.'" *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (quoting 29 U.S.C. § 207(a)(1)). "Employ" is defined in the Act as including "to suffer or permit to work." 29 U.S.C. § 203(g). "The broad meaning that has emerged from Supreme Court cases describes work as exertion or loss of an employee's time that is (1) controlled or required by an employer, (2) pursued necessarily and primarily for the employer's benefit, and (3) if performed outside the scheduled work time, an integral and indispensable part of the employee's principal activities." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008) (citations omitted). "[A]n employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work." *Id.*

"An employee bringing an action pursuant to The FLSA, based on unpaid overtime compensation, must first demonstrate that she has performed work for which she alleges she was not compensated." *Harvill*, 433 F.3d at 441 (citing *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). "An employee has met her requisite burden of proof 'if [she] proves that [she] has in fact performed work for which [she] was improperly compensated and if [she] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee even though the result may only be approximate.'" *Id.* (quoting *Anderson*, 328 U.S. at 687–88).

"An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even

if the employee does not make a claim for the overtime compensation." *Id.* (quoting *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995)) (internal quotations omitted). "The employer who wishes no such work to be done has a duty to see it is not performed. He [or she] cannot accept the benefits without including the extra hours in the employee's weekly total for purposes of overtime compensation. If the employer has the power and desire to prevent such work, he [or she] must make every effort to do so." *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997) (quoting *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975)); *accord Chao*, 514 F.3d at 288 ("An employer who has knowledge that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance."); 29 C.F.R. § 785.13 ("In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them."). But an employee cannot perform overtime without the employer's knowledge or contrary to its instructions and then assert a right to be paid. "[I]f The employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." *Harvill*, 433 F.3d at 441 (quoting *Newton*, 47 F.3d at 748) (intentional quotations omitted).

### B.    Analysis

#### 1.    The Evidence as to the Amount and Extent of Time Worked

The defendants contend that the plaintiffs presented insufficient evidence at trial to meet their burden of demonstrating the amount and extent of overtime worked. The defendants assert that the evidence presented at trial was not based on contemporaneous records and was insufficient as a matter of law.

Hilton and Krupp did not create a written record of the overtime claimed until the eve of their depositions, when they wrote down "rough estimates" for the categories of overtime they claimed. (Docket Entry No. 93 at 33–34).  Hilton testified at trial that she and Krupp did not claim overtime on their timesheets or otherwise keep contemporaneous written records of this work because one month into their employment, their direct supervisor, Executive's Regional Vice-President Cheryl Moore, told Hilton that no overtime could be submitted for approval or payment unless it was for relief-manager work when no relief manager was employed, or for "special occasions."  (Docket Entry No. 93 at 59–61, 89–90).  According to Hilton, Moore instructed her that this policy would replace the overtime policy described in Hilton's and Krupp's written employment agreements with Executive, which provided that overtime would be paid if approved in advance or incurred in an emergency.  (*Id.* at 59, 85–91).[1]  Hilton testified that, based on Moore's instructions, she understood that there was no point in claiming or otherwise recording overtime.  (*Id.* at 35 ("What was the point of keeping a record of the time if you weren't allowed to record it?")).

At trial, Hilton explained the basis for the estimates she and Krupp made for each category of overtime claimed.  The estimates included time spent tending to alarms that sounded when the office was closed, tending to late-arriving customers, completing monthly closings, and doing certain relief-manager work.  Hilton testified that the alarms at the storage facility sounded approximately 15 times per day before and after scheduled office hours, that she and Krupp would

---

[1]   The defendants argue throughout their motion for judgment as a matter of law that because the plaintiffs did not seek prior approval for The nonemergency tasks claimed, as their employment agreement required, they cannot properly claim it under The FLSA.   An employee cannot perform overtime without the employer's knowledge or contrary to its instructions and then assert a right to be paid.  *Harvill*, 433 F.3d at 441.   One of the disputed issues at trial was whether Moore instructed the plaintiffs that they were not to request or report overtime, in advance or otherwise, unless it was for a relief manager's work or for "special occasions."

6

investigate each time an alarm sounded, and that each investigation took about 15 minutes of overtime work. (Docket Entry No. 93 at 42–50). Hilton testified that approximately three times per week, a customer would arrive a few minutes before closing time wanting to rent a unit. Hilton would spend approximately one hour of overtime work completing the rental procedure with that customer. (*Id.* at 21–23, 29). Hilton also testified that she had to complete a monthly closing report on the last day of each month, even if that day fell on one of her days off, and that compiling each monthly closing report required about two hours of overtime work. (*Id.* at 54–56). Hilton also testified that she and Krupp performed 36 hours each of uncompensated relief-manager work between February 27, 2005 and March 17, 2005, after the regular relief manager was fired. (*Id.* at 33–34).[2]

A plaintiff need not "prove each hour of overtime work with unerring accuracy or certainty." *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 108 (4th Cir. 1988). "In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08 Civ. 6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) (the plaintiffs' initial burden was satisfied by affidavits based on the plaintiffs' recollections describing the time spent performing various tasks that did not receive overtime compensation).

---

[2]   Hilton testified that she and Krupp submitted and received some overtime pay for this relief-manager work, in accordance with Moore's previous representation that such overtime work would be compensated. On March 17, 2005, Moore sent Hilton and Krupp a memorandum stating that no more overtime would be paid for relief manager work, and that Hilton and Krupp were instead to stagger their regular work schedules to cover the hours. Hilton testified that in response to that memorandum, she removed 36 hours of claimed overtime from their timesheets for the first two weeks of March, which she submitted on March 19, 2005. (Docket Entry No. 93 at 133–34).

The defendants cite *Garofolo v. Donald B. Heslep Assocs., Inc.*, 405 F.3d 194 (4th Cir. 2005), for the proposition that estimates not based on contemporaneous records are insufficient to meet the plaintiffs' initial burden. *Garofolo* also involved plaintiffs who lived on the premises of the self-storage facility where they worked. But in *Garofolo*, unlike the present case, the plaintiffs had signed a "reasonable agreement" about the number of hours they would work, as provided in a regulation promulgated under the FLSA. This regulation provides:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.

29 C.F.R. § 785.23. This regulation creates a rebuttable presumption "that employees residing on the employer's premises are not working the entire time they are on the premises." 405 F.3d at 198. The *Garofolo* parties' "reasonable agreement" stated:

> In view of the Employee's respective duties and the hours of work, the Employer and each Employee acknowledge the difficulty in determining the exact number of hours worked by each Employee and, therefore agree that in accordance with Section 785.23 of the Federal Wage-Hour Law, forty (40) hours shall constitute a reasonable estimate of the hours worked each week (Monday through Sunday). It is further agreed that each estimate takes into consideration all of the pertinent factors of each Employee's respective employment and all duties and work performed in connection therewith, including all normal and "on-call" work.

*Id.* at 196. The plaintiffs in *Garofolo* did not keep contemporaneous records of hours they actually worked. In response to the defendant's summary judgment motion in that case, the plaintiffs presented estimates of the actual time they worked based on calculating the number of hours the

8

storage facility was open per week and subtracting the hours the plaintiffs spent away from the facility for personal appointments. *Id.* at 197–98. The Fourth Circuit upheld the district court's conclusion that given the agreement, these calculations were insufficient to overcome the § 785.23 presumption. In the present case, by contrast, Hilton and Krupp did not have a § 785.23 agreement with the defendants. (Docket Entry No. 68). Also, the estimates that Hilton and Krupp made identified discrete amounts of time spent on discrete tasks. These estimates are far more specific than those offered in *Garofolo,* in which the plaintiffs claimed as time worked all hours of operation during which the plaintiffs did not have personal appointments away from the facility. 403 F.3d at 198.

The facts of the present case are similar to *Thiebes v. Wal-Mart Stores, Inc.*, No. Civ. 98-802, 2004 WL 1688544, at **2–3 (D. Or. July 26, 2004). The court denied the defendant's motion for judgment as a matter of law after a jury returned a verdict granting the plaintiffs part of the overtime pay they sought. The defendant argued that the plaintiffs had not met their initial burden because they had provided only "'guesses' or 'guesstimates' of unpaid hours worked without being able to provide any foundation for those estimates," and that the estimates were "applied with broad brushstrokes to each and every week worked within a monthly, yearly, or even career-long period of time." *Id.* at *2. The court rejected the defendant's contention, concluding that "the evidence was less than perfect but sufficient." *Id.* at *3. The court noted that "[a]lthough most plaintiffs were unable to testify as to the exact dates, hours, and minutes they allegedly worked off-the-clock, most were able to make approximations tied to specific time periods. This was sufficient to submit to the jury . . . ." *Id.* The *Thiebes* court noted that the issue was not whether "the court could have come to different conclusions as to certain plaintiffs' credibility or awards," but whether "the evidence

was sufficient to support the jury's findings."  *Id.*   And as in the present case, in *Thiebes*, "[c]ompared to the number of hours sought by the plaintiffs, the jury returned a somewhat minimal award," which the court found was supported by the evidence.  *Id.*

In the present case, the plaintiffs' description of the amount and extent of their claimed overtime work satisfied their initial burden.  The fact that the plaintiffs' time estimates were not based on contemporaneous records is not a basis for judgment as a matter of law.

### 2.   The Plaintiffs Presented Sufficient Evidence that the Defendants Were Aware of Overtime Work

The defendants also argue that there is insufficient evidence to support the finding that the defendants were aware that Hilton and Krupp were performing overtime work.  No written evidence was presented at trial showing that Hilton and Krupp informed the defendants that they were working overtime hours.  Hilton testified, however, that she told Cheryl Moore at Executive and Jeff Lee at T.C. Jester that she and Krupp were both working overtime to accomplish required tasks. Hilton testified that she complained to Moore "constantly," about the alarms that sounded after hours, and that Moore would respond, "[n]o, you can't claim that for overtime."  (Docket Entry No. 93 at 68–69).  Hilton testified that she would go over Moore's head and talk to Lee, but the response was, "I'm sorry to hear that, but you can't claim overtime."  (*Id.* at 69–70).[3]  Hilton testified that she

---

[3]   At trial, counsel for the defendants confronted Hilton with her deposition testimony that she did not "address [with Jeff Lee] at all that [she] should be compensated for [her] time for addressing the alarms" because she "was told the only thing t[hey] would be compensated for was for relief managers and special occasions."  (Docket Entry No. 93 at 106).  The defendants cite this testimony as evidence that Hilton's trial testimony that she told Lee about the overtime work was neither "credible" nor "reliable" and therefore cannot support the jury verdict.  But credibility and reliability are  not proper subjects for a Rule 50 motion. And the defendants cite an incomplete part of Hilton's deposition testimony.  On redirect, plaintiffs' counsel invoked the rule of optional completeness and showed that although Hilton had testified in her deposition that she did not specifically request overtime from Lee, she also testified that she contacted Lee "constantly" to discuss the alarms, which Hilton described as "extreme" and "out of control."  (*Id.* at 108).

told Moore that she and Krupp had to assist late-arriving customers, but Moore reiterated that overtime would only be paid for "relief managers and special occasions." (*Id.* at 70). Hilton testified that she complained to Moore that sometimes she would have to prepare monthly closing reports on her day off, to which Moore allegedly responded, "Too bad. You've got to work it." (*Id.* at 71). Hilton testified that she told Moore that she had worked overtime hours performing relief-manager duties after the relief manager was terminated, but Moore told her that the time would not be compensated. (*Id.*).

Moore testified that Hilton complained to Executive and T.C. Jester about working overtime. Moore testified (through parts of her videotaped deposition played at trial) that T.C. Jester was "coming down pretty hard" on her and her employer, Executive, not to pay overtime. (Docket Entry No. 59, Ex. 5 at 94). According to Moore, Hilton and Krupp were "constantly going over my head and calling [T.C. Jester] about how much they had to work . . . so [T.C. Jester] brought it to my attention that they weren't going to pay overtime." (*Id.*, Ex. 5 at 96).[4] Moore also testified that her understanding of Executive's policy was that "there is no overtime. First warning, you get a verbal. Second warning could be termination." (*Id.*, Ex. 5 at 29).

The defendants cite several cases for the proposition that, as a matter of law, the plaintiffs did not give the defendants adequate notice that they were working overtime. In *Newton v. City of Henderson*, 47 F.3d 736, 749 (5th Cir. 1995), the plaintiff, a City of Henderson police officer assigned to work with the East Texas DEA, contended that the City had "constructive notice" that

---

[4]   The defendants contend that Moore's testimony about T.C. Jester's interactions with Hilton pertained only to the relief-manager work that Hilton and Krupp performed between February 27, 2005 and March 17, 2005, (Docket Entry No. 99 at 3–4), but this point is not entirely clear. Moore stated she did not know which specific work Hilton complained to T.C. Jester about. (Docket Entry No. 59, Ex. 5 at 97).

the plaintiff was working overtime for the DEA.  There was no dispute that the City required preapproval of overtime and that the plaintiff had neither sought such approval nor recorded overtime hours worked on his timesheet.  The defendant's supervisors at the City police department testified that they were aware that the plaintiff's job required work outside regularly scheduled hours, but they believed that the plaintiff was using "flex time" and following the written policy and would not exceed his authorized hours in a given pay period.  The plaintiff gave oral reports of his work to his supervisors but did not state the number of hours worked.  The plaintiff gave written reports to the DEA that stated the number of hours worked, but his City supervisors were not required to read these reports and there was no evidence that they, or any person responsible for processing the plaintiff's timesheets, had read them.  *Id.* at 748.  The Fifth Circuit rejected the plaintiff's "constructive notice" theory and reversed the judgment rendered after a bench trial in the plaintiff's favor.  The appellate court concluded that there was no basis to conclude that the City knew or should have known that it was violating The FLSA by paying the plaintiff only for the hours claimed on his time sheets.  *Id.* at 750.  By contrast, Hilton and Krupp presented evidence that the defendants had actual, not just constructive, notice that the various tasks required for the job required overtime work and that Hilton and Krupp were working more than a forty-hour week to complete them.  *Newton* does not provide a basis for granting the defendants' motion for judgment as a matter of law.

The other cases that the defendants cite provide no better support.  In *Harvill v. Westward Communications*, 433 F.3d at 441, the plaintiff made only conclusory assertions, unsupported by any factual allegations, that the defendant employer was aware that she had worked overtime.  In *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981), the plaintiff testified

that he had not told his supervisors that he was doing any overtime work, and the plaintiff's supervisors testified that they had no information that the plaintiff had worked overtime.   In *Millington v. Morrow County Board of Commissioners*, No. 2:06-cv-347, 2007 WL 2908817, at **7–8 (S.D. Ohio Oct. 4, 2007), there was no evidence that the plaintiff had told his supervisors that he was working overtime or that his supervisors had any reason to know that he was working overtime.   In the present case, the plaintiffs presented evidence that they told the defendants that they were working overtime and that the defendants were aware that the plaintiffs were performing overtime work.   This evidence, though disputed, is sufficient to sustain the jury's verdict.

The defendants cite trial testimony by witnesses from Executive and T.C. Jester disputing that the plaintiffs complained about working overtime or about problems with the alarms.   The defendants assert that this testimony shows that the plaintiffs' claims are not "credible" or "reliable." (Docket Entry No. 97 at 7–10).   But credibility and reliability, and the weighing of disputed and conflicting evidence, are for the jury, not for a judge deciding a Rule 50 motion.   *See DP Solutions Inc. v. Rollins, Inc.*, 353 F.3d at 427 (holding that credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge).   The defendants also cite portions of the trial transcript that call into doubt that the plaintiffs worked the total amount of hours claimed.   The defendants argue that this evidence shows that the defendants had no reason to know that Hilton and Krupp "were working nearly four hours of overtime each day" for most of their two years of employment.   (Docket Entry No. 97 at 9–10).   But the relevant issue on a motion for judgment as a matter of law is whether there was sufficient evidence to support the jury's verdict.   The jury in the present case awarded Hilton and Krupp $250 each in overtime pay—a small fraction of the $27,037 each in overtime pay that the plaintiffs

sought.  The extent of the verdict suggests that the jury considered the testimony that the defendants

cite in rendering the verdict.  The evidence at trial was sufficient to support the finding of liability

and the "minimal award" granted.  *Thiebes*, 2004 WL 1688544, at *3.

### 3.        The Evidence of Willfulness

The defendants argue that the plaintiffs did not meet their trial burden of proving that the

defendants' violation was willful.  The defendants argue that the evidence shows that Executive did

not want its resident managers to "burn out"; that all overtime reported on timesheets was paid; that

"the wage and hour laws were posted at every store location" and that "every effort was made by

Executive and The [T.C. Jester] management group to ensure that the laws were complied with."

(Docket Entry No. 97 at 14).  But the plaintiffs offered evidence at trial that they repeatedly told the

defendants about the problems that required them to work overtime, and that Cheryl Moore's

background and training would have alerted her to the fact that this overtime work was in violation

of The FLSA.  Cheryl Moore testified that she had received training about The FLSA; that she had

worked in positions in which she was responsible for ensuring that employees she supervised were

paid in accordance with federal wage and hour laws; that she understood the difference between

exempt and nonexempt employees under The FLSA; and that she understood that nonexempt

employees are entitled to be paid overtime if they work in excess of 40 hours in a workweek.

(Docket Entry No. 59, Ex. 5 at 49–50, 55, 98–99).  There was sufficient evidence at trial to support

the jury's finding of willfulness.

The evidence as to the amount and extent of the overtime work, the defendants' awareness

of that work, and the willfulness of the defendants' violation, is sufficient to sustain the jury verdict.

The defendants' motion for judgment as a matter of law is denied.

14

III.     **The Motion for Attorneys' Fees and Costs**

The plaintiffs seek $67,859.50 in legal fees for 266.5 hours of work, plus $3,395.59 in costs. The defendants oppose the application for attorneys' fees as unreasonable. The defendants argue that the some of the hours claimed are excessive or duplicative. The defendants also contend that based on the very limited degree of success the plaintiffs obtained—a $500 total damage award, doubled to $1,000 based on the willfulness finding, as opposed to the $54,074 sought—the fee application should be denied entirely or at least significantly reduced.

A.     **The Legal Standard**

The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Fee awards are mandatory for prevailing plaintiffs in FLSA cases. *See Kreager v. Solomon & Flanagan P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985). A party is a "prevailing party" for the purpose of an attorneys' fee award if the party "succeeded on any significant claim affording it some of the relief sought." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989).

Courts use the "lodestar method" to assess attorneys' fees in FLSA suits. *Saizan v. Delta Concrete Prods., Co.*, 448 F.3d 795, 799 (5th Cir. 2006). The district court must first determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating attorney. *Id.* The lodestar is then computed by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Id.* The party seeking attorneys' fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the factors set out attorneys' qualifications and skill. *See Hensley v. Eckerhart*, 461 U.S. 424, 437

(1983). The factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), may be considered.[5] After calculating the lodestar, the court must consider whether to adjust the fee upward or downward.

The most important factor to consider is the degree of success obtained. If the success is limited, the lodestar should be reduced to reflect that. But the fee award need not be precisely proportionate to the result obtained. *Saizan*, 448 F.3d at 802–03 & n.42. "Given the nature of claims under The FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of judgment in the case." *Powell v. Carey Int'l., Inc.*, 547 F. Supp. 2d 1281, 1286 (S.D. Fla. 2008).

## B.    The Lodestar Calculation

### 1.    The Hourly Rate

The first step in computing the lodestar is determining a reasonable hourly rate. The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The party seeking fees bears the burden of establishing the market rate and should present the court with evidence from which the court can determine the reasonableness of the proposed rate. *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).

---

[5]   The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

To establish the reasonableness of the requested rate, counsel "must produce satisfactory evidence—in addition to [his] own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Deltatech Constr., LLC v. The Sherwin-Williams Co.*, No. Civ. A. 04-2890, 2005 WL 3542906, at *3 (E.D. La. Nov. 3, 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984)); *see also Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 784 (S.D. Tex. 2007) ("The evidence to support an hourly rate entails more than an affidavit of the attorney performing the work but must also address the rates actually billed and paid in similar lawsuits").  In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services.  *Davis v. Bd. of Sch. Comm'rs of Mobile County*, 526 F.2d 865, 868 (5th Cir. 1976).

The plaintiffs were represented by Shellist Lazarz LLP.  The firm used a billing rate of $275 per hour for Nasim Ahmad, who has practiced primarily labor-employment law since 1999, and $235 per hour for Daryl J. Sinkule, who has practiced primarily labor-employment law since 2002. Ahmad's affidavit states that $275 per hour is his normal rate in cases of this nature, and that the prevailing hourly rate for Houston labor and employment lawyers with Ahmad's level of experience is $225 to $350.  Sinkule's affidavit states that $235 is his normal rate in cases of this nature, and that the prevailing hourly rate for Houston labor and employment lawyers with Sinkule's level of experience is $200 to $250.  The attorney for T.C. Jester, Christy Hext, who has 21 years' experience in general litigation, states that her own rate for this case was $175 per hour.  She contends that Ahmad's and Sinkule's hourly rates should be limited to $250 and $200, respectively.  (Docket Entry No. 90, Ex. 1 ¶ 4).  This court takes judicial notice of the Texas State Bar's "Hourly

Rates in 2005 Report," the most recent such report, which shows that the median hourly rate for labor-employment attorneys in Texas was then $275 per hour.[6]  The hourly rates submitted by Shellist Lazarz are consistent with prevailing Houston market rates for attorneys with comparable credentials and experience and are reasonable.

### 2.    The Number of Hours Reasonably Expended

The second step of the lodestar analysis is to determine the number of hours reasonably expended on the litigation.  The application should include "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).  "Hours that are excessive, redundant, or otherwise unnecessary are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."  *Id.*  (internal quotations and citations omitted).  Fee applicants bear the burden of establishing appropriate hours and hourly rates and the exercise of billing judgment.  *Saizan*, 448 F.3d at 799; *see also Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 251 (5th Cir. 2002); *Riley v. City of Jackson*, 99 F.3d at 760.  Billing judgment requires documenting both the hours charged and those not charged as unproductive, excessive, or redundant.  *Saizan*, 448 F.3d at 799.

Shellist Lazarz began representing Hilton and Krupp in August 2007, after their previous counsel withdrew.  Only minimal discovery had been conducted and no dispositive motions had

---

[6]   *See* Texas State Bar, Dep't of Research & Analysis, *Hourly Rates in 2005 Report* at 14 (Sept. 21, 2006), *available at*: http://www.texasbar.com/Template.cfm?Section=Research_and_Analysis&Template=/ ContentManagement/ContentDisplay.cfm&ContentID=15888 (last visited May 24, 2009).

been filed.   In affidavits, Ahmad and Sinkule describe the nature and amount of work they performed, and they attached their billing records.  (Docket Entry No. 89, Exs. 1, 2).  These records show that plaintiffs' counsel spent over 330.45[7] hours on this case. They are seeking fees for only 266.5 hours.  The plaintiffs contend that this decrease reflects the exercise of "considerable billing judgment" in eliminating duplicative time.  (*Id.* at 4)  Plaintiffs' counsel state that whenever the two attorneys billed time "working on a similar task that could have been completed by only one lawyer, such as attending a deposition or attending trial," they did not charge for one lawyer's time.  (*Id.*).  Plaintiffs' counsel do not include, in either their original-hours calculation or their reduced-hours calculation, time billed by paralegals, legal secretaries, or other attorneys at Shellist Lazarz on this case.  (*Id.*).

A summary of the various categories of time claimed by the plaintiffs is set out below:

| Task | Timekeeper | Hours | Rate | Amount |
|------|-----------|-------|------|--------|
| Preliminary Matters Related to Assumption of Case | Ahmad | 4.25 | $275 | $1,168.75 |
| Activities Related to Abandoned Motion for Class Certification | Sinkule | 1.90 | $235 | $446.50 |
| Miscellaneous Conferences With Opposing Counsel | Sinkule | 3.10 | $235 | $728.50 |
| Status Updates to The Court | Sinkule | 1.85 | $235 | $434.75 |
| Discovery | Ahmad | 9.70 | $275 | $2,667.50 |
| | Sinkule | 37.85 | $235 | $8,894.75 |
| Summary Judgment Opposition | Ahmad | 31.75 | $275 | $8,731.25 |

---

[7]  The totals of the time entries are in hundredths of an hour because plaintiffs' counsel sometimes billed in tenths of an hour (.10) and sometimes in quarters (.25).  The plaintiffs do not explain why different increments were used.

| Task | Timekeeper | Hours | Rate | Amount |
|------|-----------|-------|------|--------|
| | Sinkule | 4.70 | $235 | $1,104.50 |
| Trial Preparation | Ahmad | 50.50 | $275 | $13,887.50 |
| | Sinkule | 67.75 | $235 | $15,921.25 |
| Settlement Discussions | Sinkule | 5.80 | $235 | $1,363.00 |
| Attention to Defendants' Dismissal of Cross-Claim | Sinkule | 0.35 | $235 | $82.25 |
| Trial | Ahmad | 34.00 | $275 | $9,350.00 |
| | Sinkule | 13.00 | $235 | $3,055.00 |
| **Totals:** | Ahmad Total | 130.20 | $275 | $35,805.00 |
| | Sinkule Total | 136.30 | $235 | $32,030.50 |
| | Grand Total | 266.50 | | $67,835.50[8] |

The defendants contend that the hours claimed are excessive. Some of these contentions are readily addressed. For example, the defendants contend that when the plaintiffs eliminated duplicative entries, they always retained the charge for Ahmad, who has the higher hourly rate. But the billing records reveal many instances of duplicative entries credited to Sinkule, not Ahmad. (*Id.*, Ex. 1-A). The defendants also contend that the plaintiffs seek fees for both counsels' review of deposition notices on September 4, 2007. (Docket Entry No. 90 at 4). But the plaintiffs' billing records show that the charge for Sinkule's review was deleted from the fee application. (Docket Entry No. 89, Ex. 1-A at 2). The defendants complain that ".20 [of an hour] is the least amount of time Plaintiffs' counsel billed regardless of the time required for the task. Simple review of a letter or email does not take twenty minutes." (Docket Entry No. 90 at 5). But two-tenths of an hour is

---

[8]   It is a small point, but this court's total of the fees varies slightly from plaintiffs' counsel's $67,859.50 total.

12 minutes, not 20, and the billing records contain several entries for smaller amounts of time.  The records do not show that plaintiffs' counsel billed two-tenths of an hour to review a letter or email.

The defendants raise other issues that merit reducing the hours in the fee application.  The defendants point out that in several billing entries, the plaintiffs seek fees for time Ahmad and Sinkule spent conferencing with each other.  The billing-judgment rule does not permit the plaintiffs to bill for both attorneys' participation.  *See Kraft v. Arden*, No. Civ. 07-487, 2009 WL 602971, at *7 n.2 (D. Or. Mar. 9, 2009) ("When attorneys hold a . . . personal conference with another attorney . . ., good 'billing judgment' mandates that only one participant in the conference should bill for that time." (internal citations and quotations omitted)); *Key Bank Nat'l Ass'n v. Van Noy*, 598 F. Supp. 2d 1160, 1166 (D. Or. 2009) ("[H]aving more than one attorney involved in the case, which necessitates a certain amount of attorney conferencing, while understandable, makes it unreasonable to shift the charges for both attorneys to another party.").  This court has identified three entries in the plaintiffs' fee application for conferences between their counsel.  These entries include a 1.5-hour conference on June 7, 2008 on the defendants' summary judgment motion; a conference described as one activity in Ahmad's 4.5-hour and Sinkule's 8.2-hour entries on August 22, 2008 (joint pretrial order); and a conference described as one activity in Ahmad's 7.5-hour and Sinkule's 9.0-hour entries from October 23, 2008 (trial preparation).  (Docket Entry No. 89, Ex. 1-A at 4–5, 8).  Because the August 22 and October 23 entries are combined with other activities, it is not possible to determine with precision how long the conferences on these dates lasted.  Using reasonable estimates, this court concludes that the hours used to calculate the lodestar should be reduced by the following amounts: 1.5 hours on June 7, 2008 for Sinkule; 1.5 hours on August 22, 2008 for Sinkule; and 1.5 hours on October 23, 2008 for Ahmad.

21

The defendants also challenge time that Sinkule billed for traveling to the depositions of two of the defendants' witnesses in Denver, Colorado.  Sinkule billed 5.5 hours on May 8, 2008 for travel from Houston to Denver and for deposition preparation, and billed 15 hours on May 9, 2008 for attending the depositions and for return travel to Houston.  (Docket Entry No. 89, Ex. 1-A at 3). The billing records do not make clear whether any of the travel time to Houston was also spent preparing for the depositions; it appears that no compensable work on this case was done on the return trip.  The Fifth Circuit has not addressed whether travel time may properly be awarded as part of attorneys' fees under The FLSA.  But courts in the Fifth Circuit have held in other contexts that a court has discretion to reduce hours billed to travel time in calculating a fee award.  *See In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008) (evaluating Fifth Circuit precedent from various types of cases and concluding as a general rule that "it is not an abuse of discretion to discount non-working (and even working) travel time"); *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993) (in a Voting Rights Act case, affirming the district court's decision to discount the hourly rate billed for travel time); *Bd. of Supervisors of La. State Univ. v. Smack Apparel*, No. 04-1593, 2009 WL 927996, at *6 (E.D. La. Apr. 2, 2009) ("[T]ravel time . . . in the Fifth Circuit is usually compensated at 50% of actual time."); *cf. Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008) (in FLSA case, affirming compensation of travel time at half-rate, "in accordance with established [Second Circuit] custom").  The billing records indicate that Sinkule seeks fees for at least some nonworking travel time, although the precise amount of that time is not clear from the billing records.  Sinkule's travel time is reduced by 4 hours.

The defendants contend that the plaintiffs should not be permitted to bill for the time spent on causes of action that were abandoned before trial or dismissed on summary judgment.  When a

plaintiff achieves only partial success, attorneys' fees should not be awarded for hours not "expended in pursuit of the ultimate result achieved." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (internal citations omitted); *see also Saizan*, 448 F.3d at 799. Time spent pursuing successful and unsuccessful claims that "involve a common core of facts," however, need not be reduced if these claims are so intertwined as to "mak[e] it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. The *Hensley* standard has been applied in The FLSA context. *See, e.g., Tran v. Tran*, 67 F. App'x 40, 43 (2d Cir. 2003).

Under *Hensley*, The 1.9 hours that Sinkule spent researching (and rejecting) the possibility of seeking collective action treatment for this case should be excluded from the lodestar. Under *Hensley*, this court also deducts the time spent pursuing the claims for overtime that this court dismissed on summary judgment on September 3, 2008. The claims dismissed on summary judgment included overtime for manually opening and closing the gates, relief-manager duties after March 15, 2007, processing bank deposits and credit-card charges, and assisting with after-hours emergencies. (Docket Entry No. 68). The extent of the reduction must take into account that much of the work overlapped with work on the claims that remained in the case after summary judgment and would have been required even if the plaintiffs had not pursued the claims for overtime that were dismissed on summary judgment. Depositions, for example, would still have been taken; document discovery would still have occurred. Ahmad billed 56.7 hours and Sinkule 67.35 hours before this court ruled on the summary judgment motion. A reduction of 3 hours per attorney—roughly a 5% reduction in the time claimed—is appropriate.[9]

---

[9]   The defendants argue that the hours should be further reduced because at trial, the defendants voluntarily abandoned two more claims that survived summary judgment—overtime for missing lunches and helping customers for lost keys. But there is no evidence that the defendants pursued those claims after this court's

The defendants also contend that the time claimed was excessive because this case could have been handled by only one attorney.  (Docket Entry No. 90 at 4).  The plaintiffs seek fees for only one attorney's time at each deposition and court conference and at trial.  This court has made reductions for other billing entries that the defendants specifically identified as being redundant. No further reductions are warranted on this basis.  *See Key Bank Nat'l Ass'n v. Van Noy*, 598 F. Supp. 2d at 1166 (the remedy when too many attorneys are alleged to have worked on a case is to eliminate duplicative time in the fee application).

Finally, the defendants contend that the plaintiffs' lawyers spent "excessive" amounts of time on deposition preparation, the summary judgment opposition, their portion of the joint pretrial order, and trial preparation.  The defendants do not propose what amount of time would have been appropriate except to state that their own attorneys spent less time on these same tasks. For some of these tasks, the defendants do not specify how much time their attorneys spent.  Given the deductions in the number of hours already made, the hours that plaintiffs' counsel expended on depositions, summary judgment, trial preparation and trial do not appear unreasonable.  A reduction on this basis is not appropriate.

Totaling all of the above reductions, Ahmad's hours for purposes of calculating the lodestar are reduced by 4.5, from 130.2 to 125.7.  Sinkule's hours are reduced by 11.9, from 136.3 to 124.4. The 125.7 hours multiplied by Ahmad's $275 hourly rate yields $34,567.50; the 125.4 hours multiplied by Sinkule's $235 hourly rate is $29,469.00.  Adding these amounts together, the lodestar is $64,036.50.

---

summary judgment ruling.  This court declines to make a further reduction on that basis.

C.        Adjustments to the Lodestar

A court may decrease or enhance the lodestar based on the factors first set out in *Johnson v. Georgia Highway Express*, 488 F,2d at 717–19.  Some of these factors are subsumed in the initial lodestar calculation and should not be counted again.  *Saizan*, 448 F.3d at 800.  The most critical single factor in determining the reasonableness of a fee award is the degree of success obtained.  *Id.* "Where 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.'" *Id.* at 801 (quoting *Migis v. Pearle Vision*, 135 F.3d 1041, 1048 (5th Cir. 1998)).

At trial, the plaintiffs sought to recover $54,074 on claims for unpaid overtime allegedly spent responding to alarms that sounded outside regular business hours, tending to late-arriving customers, completing monthly closings, and performing certain relief manager work.  The jury awarded only $500, less than one percent of the requested amount.  The defendants contend that this award is "nominal" and that this court has the discretion to deny attorneys' fees entirely.  (Docket Entry No. 90 at 2).

The FLSA provides that when an employer is found to have violated the statute, "[t]he court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant."  29 U.S.C. § 216(b) (emphasis added).[10]  A refusal to award any fees would be inappropriate.  But The FLSA case law does show that the degree

---

[10]   The cases that the defendants cite all arise under the attorneys' fee statute in the civil rights laws, which provides that "the court, in its discretion, *may* allow the prevailing party . . . a reasonable attorney's fee."  42 U.S.C. § 1988 (emphasis added).  This statute does not apply to The FLSA.

of success bears significantly on the "reasonableness" of the attorneys' fees sought, and that a substantial reduction is appropriate where, as here, the actual recovery is only a small fraction of the damages sought.

In FLSA cases, a reduction to the lodestar is an appropriate means to adjust a fee award to reflect the limited degree of success obtained.  In *Saizan*, for example, the Fifth Circuit upheld an attorneys' fee award that reduced the attorneys' fees sought to reflect the difference between the initial prayer and the ultimate settlement amount.  448 F.3d 795, 801.[11]  In *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 151–52 (2d Cir. 2008), the court upheld a 50% reduction to the $99,778.75 lodestar based on the plaintiff recovering only $1,774.50, a small fraction of the damages initially sought, and incurring a claimed $350,375 in legal fees doing so.  In *Spegeon v. Catholic Bishop of Chicago*, 175 F.3d 544, 558 (7th Cir. 1999), the Seventh Circuit upheld an attorneys' fee award that reduced the lodestar by 50% because the plaintiff obtained a judgment of only $1,100 on a $25,000 prayer.  In *International Brotherhood of Carpenters and Joiners of America , AFL-CIO, Local Union No. 217 v. G.E. Chen Construction, Inc.*, 136 F. App'x 36, 39 (9th Cir. 2005), the court upheld a 67% reduction to the lodestar.  The plaintiffs initially sought $ 6.7 million but recovered only $7,897 on their FLSA claim.  The dissent in that case argued for a further reduction to the lodestar, arguing that the resulting $208,173.08 fee award dwarfed the plaintiffs' recovery and "create[d] a perverse incentive," serving as an "inducement for the lawyers to pursue their own interests . . . instead of the interests of these impecunious laborers for whom compensation

---

[11]    In making the proportionate reduction, however, the district court in *Saizan* also took into account The plaintiffs' "failure to establish billing judgment and inability to prove any element of The case."  448 F.3d at 803.  This court has already made The necessary adjustments for billing judgment and dismissed or abandoned claims in calculating The lodestar.  This court's adjustments to The lodestar will not consider these factors, as to do so "would be impermissible double counting."  *Saizan*, 448 F.3d at 800.

probably could have been quickly obtained with a settlement.  Paying the lawyers 26 times what their clients win makes a mockery of a system in which lawyers are supposed to serve their clients, not use them." *Id.* at 39–40 (Kleinfeld, J., dissenting).

In *Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1296 (S.D. Fla. 2008), the court reduced the lodestar by 67% because the plaintiffs settled for a total of $294,140 after initially seeking more than $15 million in damages.  In *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1326 (M.D. Fla. 2001), the court reduced the lodestar by 67% because the plaintiffs recovered less than 15% of the damages originally claimed.  In *Hoffman v. S. Garber, Inc.*, No. 92-C-3535, 1993 WL 189623, at *4 (N.D. Ill. June 2, 1993), the court reduced the lodestar by 41%, reflecting the difference between the amount sought and the result obtained.  The court noted that a percentage reduction was appropriate because an award in the amount originally sought would "encourage[ ] overpreparation and overextension for cases that easily are pursued as a vehicle for generating fees." *Id.*  Reductions to the lodestar based on the degree of success have also been found appropriate in cases outside The FLSA context.  *See, e.g., Zook v. Brown*, 865 F.2d 887, 895–96 (7th Cir. 1989) (reducing lodestar by 75% in § 1983 case); *Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987) (affirming 67% reduction to lodestar in § 1983 case in which the plaintiff recovered only $30,000 of $2 million sought).

The plaintiffs argue that a downward adjustment to the lodestar is not warranted because other *Johnson* factors weigh against reducing the lodestar.  The plaintiffs argue, for example, that this case posed novel and difficult questions that required additional time and labor and was therefore an "undesirable case."  (Docket Entry No. 89 at 5–6, 8).  The plaintiffs contend that the case presented "unique issues regarding whether a *Garofolo* agreement existed between the parties."

(Docket Entry No. 89 at 5–6).  But plaintiffs' counsels' time entries reflect relatively little research done on The *Garofolo* matter.  In any event, the defendants' *Garofolo* claim was dismissed on summary judgment, before most of the attorney hours were incurred.  (Docket Entry No. 89, Ex. 1-A).  The plaintiffs also contend that this case presented "unique issues regarding employer knowledge of Plaintiffs' work outside of scheduled business hours."  (*Id.* at 5).  But the plaintiffs do not explain how the issues in this case differ from the many other FLSA cases in which the employer's records do not reflect the amount of overtime claimed.

The plaintiffs also assert that during a two-week period for trial preparation and trial, they were precluded from pursuing other cases.  (*Id.* at 6–7).  But this is a relatively small portion of the fifteen months that plaintiffs' counsel spent litigating this case.  There is no indication that plaintiffs' counsel was precluded from pursuing other employment during most of this time.  An upward adjustment on this basis is not warranted.

The plaintiffs also contend that the fact that they used experienced attorneys who charged a customary fee cuts against a downward reduction to the lodestar.  (*Id.* at 6–8).  But the skill of the attorneys and the appropriateness of the hourly fee were already considered in determining the lodestar and should not be used again at this stage.

Finally, the plaintiffs argue that because the case was taken on a contingency-fee basis, reduction is inappropriate.  (*Id.* at 7).  But the federal fee-shifting statutes do not compensate for the risk of nonpayment when an attorney takes a case on a contingency basis.  *City of Burlington v. Dague*, 505 U.S. 557, 566–67 (1992) ("An attorney operating on a contingency-fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not.  To award a contingency enhancement under a fee-shifting statute would in

effect pay for the attorney's time . . . in cases where his client does *not* prevail."); *see also McKay v. Reliance  Standard Life Ins. Co.*, No. 1:06-cv-267, 2009 WL 537197, at *13 (E.D. Tenn. Mar. 3, 2009); *Prater v. Commerce Equities Mgt. Co.*, No. H-07-2349, 2008 WL 5140045, at *8 (S.D. Tex. Dec. 8, 2008); *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1351 (S.D. Fla. 2007). The fact that plaintiffs' counsel served on a contingency basis cannot be used as a countervailing factor when a downward adjustment to the lodestar is otherwise appropriate.

The case law and the *Johnson* factors weigh in favor of a significant downward adjustment to the lodestar.  A 67% reduction is appropriate, yielding attorneys' fees of $21,132.05.

The plaintiffs argue that this court should take a smaller percentage, as in *Lucio-Cantu v. Vela*, 239 F. App'x 866, 868 (7th Cir. 2007), an FLSA case in which the Fifth Circuit concluded that the district court's decision to reduce the lodestar by only 10% did not yield an excessive fee award. The *Vela* opinion did not state the amount that the plaintiffs initially sought, but noted that the final damages after doubling for a finding of willfulness were $9,393.58.  The Fifth Circuit found no abuse of discretion in the resulting fee award, which was $51,750—roughly 5.5 times the amount of recovery.  By contrast, the $21,132.05 resulting after the adjustment to the lodestar in this case is over 21 times the amount of the plaintiffs' recovery after doubling for willfulness.  Under the case law, the amount of the reduction is appropriate.

### D.    Costs

Finally, the plaintiffs seek $3,395.59 in costs under Federal Rule of Civil Procedure 54(d) that provides, in relevant part, that "[u]nless a federal statute, these rules or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  There is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs. *Cheatham*

*v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006).  "Reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment are types of litigation expenses that are recoverable under The FLSA as part of an attorneys' fee award."  *Quintanilla v. A&R Demolition Inc.*, No. H-04-1965, 2007 WL 5166849, at *9 (S.D. Tex. May 7, 2007).  Costs such as court-reporter fees, copying fees, and docket fees, are similarly compensable under 28 U.S.C. § 1920.[12]  The costs plaintiffs claim are all compensable under Rule 54(d).  (Docket Entry No. 89, Ex. 1-A at 16).  The defendants are ordered  to pay $3,395.59 in costs to the plaintiffs.

## IV.    Conclusion

The defendants' motion for judgment as a matter of law is denied.  The plaintiffs are awarded $21,132.05 in attorneys' fees and $3,395.59 in costs.

SIGNED on June 18, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[12]    Title 28 U.S.C. § 1920 allows the following categories of costs:

(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.